FILED

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

JUL 2 7 2004

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| RUSSELL R. WASENDORF. SR. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 04 C 1904 |
| | ) | |
| DBH BROKERHAUS AG, | ) | JUDGE HARRY LEINENWEBER |
| RALF A. MAC GRANAKY-QUAYE, | ) | MAGISTRATE JUDGE NAN NOLAN |
| DANIEL J. GUMPEL, | ) | |
| JURGEN BECKER, | ) | |
| | ) | |
| Defendants. | ) | |

DOCKETED

AUG 1 2 2004

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
## DANIEL J. GUMPEL'S MOTION TO DISMISS

This action -- brought by an American investor in and Supervisory Board member of a German corporation, alleging that other Supervisory Board members of that German corporation violated duties owed plaintiff under German law -- belongs in Germany. This Court should decline to exercise personal jurisdiction over Daniel Gumpel or, in the alternative, should exercise its discretion to dismiss the claims against him under the doctrine of *forum non conveniens.*

Plaintiff, Russell Wasendorf, is a sophisticated businessman who chose to invest in, and to join the Supervisory Board of, a German corporation. (Cmpl. ¶¶ 1, 13)[1] Even a cursory review of Wasendorf's complaint highlights that the vast majority of Wasendorf's interactions with the defendants were with Ralf MacGranaky-Quaye ("McQuaye"), who Wassendorf alleges is the CEO and Chairman of the Board of Directors of DBH (Cmpl. ¶ 3), and not with Mr. Gumpel. Wasendorf and McQuaye were business associates for many years prior to Wasendorf's investment in DBH, and it was exclusively McQuaye -- not Daniel Gumpel --

---

[1]   Mr. Gumpel assumes the truth of Plaintiff's allegations, including his allegations relating to defendants
MacGranaky-Quaye and DBH, solely for purposes of this Motion to Dismiss.



who is alleged to have traveled to Chicago to discuss Wasendorf's investment and ongoing role in the German company. *Id.* ¶¶ 11-23

In contrast, virtually all of the contacts between Wasendorf and Gumpel were the result of Wasendorf's participation in DBH Supervisory Board meetings (e.g., *id.* ¶ 35) -- all of which took place in Germany, and most of which were attended by Wasendorf in person. (Gumpel Aff. ¶ 6, Ex. A) Wasendorf's sole allegation that Mr. Gumpel had anything amounting to a significant contact with Illinois is a single trip made by Mr. Gumpel in June 2001. (Cmpl. ¶ 28) That trip had nothing to do with the management of DBH or Wasendorf's claims. (Gumpel Aff. ¶¶ 8-10) Although Mr. Gumpel was invited by Mr. Wasendorf to attend one short meeting for the purpose of being introduced to Wasendorf's colleagues, Mr. Gumpel did not discuss any business involving DBH at that meeting, or during the entire trip to Chicago. *Id.* It is Wasendorf who has availed himself of German law, not the other way around.

## I.   WASENDORF'S COMPLAINT AGAINST DEFENDANT GUMPEL SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION.

Wasendorf "has the burden of demonstrating the existence of personal jurisdiction," *RAR v. Turner Diesel*, 107 F.3d 1272, 1276 (7th Cir. 1997). He has failed to do so, and the complaint against defendant Gumpel, therefore, should be dismissed in its entirety.

Under the Fourteenth Amendment, states may exercise two types of personal jurisdiction over a nonresident defendant: general and specific.[2] Wasendorf has not alleged that Mr. Gumpel has had "continuous and systematic contact" with the state of Illinois. Nor could he. Thus, Wasendorf must demonstrate that this Court has specific jurisdiction, which arises

---

[2]   In diversity cases such as this, the District Court has jurisdiction only if an Illinois court would have jurisdiction. *RAR*, 107 F.3d at 1275. The Illinois Long Arm statute, 735 ILCS 5/2-209(c), however, now extends jurisdiction on "any…basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." Furthermore, because the Seventh Circuit has found "no operative difference" between the due process limits of the Illinois Constitution and those of the Constitution of the United States, federal courts in Illinois focus principally on "the limits that the Fourteenth Amendment due process places on state exercises of personal jurisdiction." *Hyatt Intl. v. Coco*, 302 F.3d 707, 715-16 (7th Cir. 2002).

2

where "the defendant has a lesser degree of contact with the state, but the litigation arises out of or is related to those contacts." *Logan Productions v. Optibase*, 103 F.3d 49, 52 (7th Cir. 1996).

In determining whether specific jurisdiction exists, a two-part inquiry is required. *First*, Wasendorf must establish that Mr. Gumpel "purposefully established 'minimum contacts'" with Illinois. *Burger King v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *International Shoe Co, v. Washington*, 326 U.S. 310, 316 (1945)). These contacts must be such that Mr. Gumpel "should reasonably anticipate being haled into court" in Illinois. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) ("some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws").

*Second,* even if it is determined that minimum contacts were purposefully established, "these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King*, 471 U.S. at 476 (citing *International Shoe*, 326 U.S. at 320). The "minimum requirements inherent in the concept of 'fair play and substantial justice' may defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities." *Burger King*, 471 U.S. at 477-78 (citing *World-Wide Volkswagen*, 444 U.S. at 292). Here, Wasendorf has failed to demonstrate that specific jurisdiction exists at both steps in the inquiry.

## A.    Mr. Gumpel Did Not Purposefully Establish Minimum Contacts with Illinois.

Wasendorf does not -- and cannot -- allege that Mr. Gumpel purposefully availed himself of the privilege of doing business in Illinois. Nor has he alleged a tort that caused harm in Illinois. As a result, this Court does not have specific jurisdiction over Mr. Gumpel.

While it is unclear from Wasendorf's complaint whether it was Wasendorf or McQuaye who made the initial business contact, it is undisputed that Mr. Gumpel did not play any role in the solicitation and/or negotiations that led Wasendorf to become a shareholder and

3

member of the Supervisory Board of the German corporation, defendant DBH. (Gumpel Aff. ¶¶ 4-5) Mr. Gumpel first met Wasendorf at the December 9, 1999 shareholders meeting in Germany, when both he and Wasendorf were elected to the Supervisory Board. *Id.* ¶ 4.

The Supreme Court has held that "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Hanson*, 357 U.S. at 253. The very limited contact between Mr. Gumpel and Mr. Wasendorf involving Illinois was a result either of Wasendorf's own decisions or the decision of defendant McQuaye to bring Wasendorf on as an investor and Wasendorf's election to the Supervisory Board, not the result of any choice by Mr. Gumpel. As a result, none of these contacts constitute the "'purposeful availment'" of the "privilege of conducting activities with [Illinois]" so as to "'invok[e] the benefits and protections of its laws.'" *Burger King*, 471 U.S. at 475 (citing *Hanson*, 357 U.S. at 253). A review of the undisputed facts demonstrates that, at best, Mr. Gumpel's contacts with Illinois were "'fortuitous'" or "'attenuated'" and thus cannot form the sole basis for personal jurisdiction. *Burger King*, 471 U.S. at 475 (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984); *World-Wide Volkswagen*, 444 U.S. at 299).

*First,* during the entire relevant time period, Mr. Wasendorf and Mr. Gumpel conducted DBH-related business almost exclusively in connection with DBH shareholder meetings and Supervisory Board meetings, all of which occurred in Germany. (Gumpel Aff. ¶¶ 6-7) Indeed, Wasendorf visited Germany several times a year during the period from 1999-2003 to attend these meetings. *Id.* ¶ 6. On rare occasions, Mr. Gumpel, from Germany, had contact with Wasendorf outside of the context of these Supervisory Board and shareholder meetings in Germany. (Gumpel Aff. ¶ 7) These communications, which did not occur more than approximately 4-6 times during the time period from December 1999 through July 2003, however, were mostly of a private nature (including discussions regarding hotel and restaurant

recommendations). *Id.* Such attenuated contacts cannot form the sole basis for establishing personal jurisdiction over Mr. Gumpel in Illinois.

      *Second,* the torts allegedly committed were not committed in Illinois and did not result in harm in Illinois. Though the Supreme Court has held that under certain circumstances "intentional, and allegedly tortuous, actions" "expressly aimed at" a forum state can lead a defendant to "'reasonably anticipate being haled into court there,'" *Calder v. Jones* 465 U.S. 783, 789-90 (1984), this is only the case both when the tortuous activities are deliberately directed at the forum state and the principal harm is felt in the forum state, as well. *Id.* at 788-89. *See also FMC Corp v. Varonos*, 892 F.2d 1308 (7th Cir. 1990) (personal jurisdiction applied to nonresident employee who not only submitted allegedly fraudulent communications to her employer in Illinois, but also caused economic loss in Illinois.); *Club Assistance Program v. Zukerman*, 594 F.Supp. 341, 346 (N.D.Ill. 1984) (same).

      Here, Wasendorf accuses defendant Gumpel of self-dealing and mismanagement, (Cmpl. ¶¶ 29, 36), exceeding the bounds of his authority as a member of the Supervisory Board, (Cmpl. ¶¶ 22, 32), and concealing these activities (Cmpl.¶¶ 28, 29, 34, 35, 39, 42). Any such actions by Gumpel took place exclusively in Germany.[3] Moreover, any harm from these alleged activities fell on DBH, a German corporation in Germany.

      Any harm to DBH shareholders, including Wasendorf, was indirect and affected all shareholders regardless of where they lived. The Seventh Circuit has held that merely because "shareholders may have been injured by some effect on their interest in the corporation does not mean that the tort was committed wherever they reside." *Young v. Colgate-Palmolive Co.*, 790 F.2d 567, 570 (7th Cir. 1986).[4]

---

[3]    Defendant Gumpel assumes the truth of the allegations for purposes only of this motion. *See* n. 1, *supra.*

[4]    Even in the wake of *Calder v. Jones*, courts have distinguished this holding only in instances where a defendant "is claimed to have targeted a particular Illinois victim." *Agsco Corp. v. Scheer*, No. 99 C 4375, 1999 WL

***Third,*** the Complaint alleges only that Mr. Gumpel made one trip to Illinois during the relevant time period. (Cmpl. ¶ 3-5, 12, 21) What the Complaint omits, however, is that Mr. Gumpel was invited to Chicago by Mr. Wasendorf, that he traveled with his son, and that all of their expenses were paid by Wasendorf (not DBH). (Gumpel Aff. ¶ 8) Mr. Gumpel and his son arrived in Chicago on June 20, 2001 and left on Sunday, June 24. *Id.* With the exception of one short meeting on Saturday afternoon, the entire trip was spent sightseeing. *Id.* The other individuals invited to travel to Chicago at Wasendorf's expense included defendant Jurgen Becker and his wife, and several members of DBH management. *Id.* ¶ 9.

Mr. Wasendorf asked Mr. Gumpel and Mr. Becker to be present at a meeting in his Chicago offices, which was scheduled for Saturday afternoon. *Id.* ¶ 9. Wasendorf was meeting with several of his business colleagues from Florida, and was hoping to convince them to purchase a substantial part of the shares that Wasendorf personally held in DBH. *Id.* These business colleagues wanted to meet members of the DBH Supervisory Board and of DBH management before deciding whether or not to purchase Wasendorf's shares. *Id.* At the meeting, Wasendorf discussed DBH business -- in particular his personal views about DBH's prospects in the short and long term -- and offered his colleagues shares from his own portfolio. Neither Mr. Gumpel nor Mr. Becker participated in the discussion. *Id.* ¶¶ 9-10. In short, Mr. Gumpel's entire visit to Chicago was planned by Wasendorf in order to use Mr. Gumpel in his marketing efforts to sell his own DBH stock. Mr. Gumpel's trip to Chicago was not made to conduct business on behalf of DBH.

***Finally,*** to the extent Wasendorf claims that allegedly false or misleading statements by Gumpel induced him to transfer money to DBH or to purchase additional shares in

---

1285867, at *3 (N.D.Ill. Dec. 30, 1999). Here, plaintiff is an Iowa citizen, any harm occurred in Iowa, and, although plaintiff alleges that certain communications were directed at him and/or withheld from him, he does not allege that any harm resulting from self-dealing, mismanagement or abuse of authority was directed at anyone more specific than DBH itself and all of its non-defendant shareholders.

DBH, any resulting financial harm to Wasendorf occurred in *Iowa*. Wasendorf is an Iowa citizen (Cmpl. ¶ 1) who transferred all of the funds in question from his Iowa bank.[5] (Pl.'s Ex. A) The fact that Wasendorf happens to "conduct his financial affairs" from an office in Illinois does not transform any alleged financial harm from Germany and Iowa to Illinois.

**B.     Assertion of Personal Jurisdiction Over Defendant Gumpel Would Violate Traditional Notions of Fair Play and Substantial Justice.**

Even if this Court were to determine that Mr. Gumpel had purposefully established minimum contacts with Illinois, and that those contacts were such that he should have reasonably anticipated being sued in Illinois -- which it should not -- personal jurisdiction under these circumstances would still not comport with traditional notions of "'fair play and substantial justice.'" *Burger King*, 471 U.S. at 476. "'Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field.'" *Asahi Metal Indus. Co. v. Super. Ct. of Cal. Solano County*, 480 U.S. 102, 115 (1987). The circumstances surrounding this dispute -- including (i) the peripheral role of Mr. Gumpel, (ii) the deliberate choice of Wasendorf to actively invest in and involve himself in the management of a German corporation, and (iii) the focus on German banking and corporate governance law that will be central to resolution of this case -- all highlight the basic unfairness of haling Mr. Gumpel, an individual defendant and resident of Germany, into an Illinois Court.

The *Burger King* court identified five factors to be considered:

1) the burden on the defendant;

2) the forum State's interest in adjudicating the dispute;

3) the plaintiff's interest in obtaining convenient and effective relief;

4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversies; and

---

[5]     Though plaintiff claims to manage his two corporations from an office in Illinois, neither of these corporations, PFG or PF&S are plaintiffs in this matter. (Cmpl. ¶ 1).

    5) the shared interest of the several States in furthering substantive social
       policies.

*Burger King*, 471 U.S. at 477. In balancing these factors courts have typically used a "'sliding

scale' approach," evaluating the fairness factors "in light of the strength of the minimum contacts

analysis." *Andersen v. Sportmart* 57 F.Supp.2d 651, 661 (N.D.Ind. 1999).

      In this case, the *Burger King* factors weigh strongly against the exercise of

personal jurisdiction over Mr. Gumpel. ***First,*** the burden on Mr. Gumpel, an individual

defendant who is a citizen and resident of Germany, would be considerable. The Supreme Court

has held that "[t]he unique burdens placed on one who must defend oneself in a foreign legal

system should have significant weight in assessing the reasonableness of stretching the long arm

of personal jurisdiction." *Asahi*, 480 U.S. at 114. Mr. Gumpel has no business interests or

personal interests in the United States, let alone in Illinois. (Gumpel Aff. ¶ 3) Any travel to

Illinois would be solely for purposes of defending himself in this litigation. *Id.* All such

expenses would be borne by Mr. Gumpel individually, not by DBH. *Id.*

      Indeed, with the exception of Wasendorf, all of the other likely relevant

witnesses, including past and present members of the Supervisory Board, and past and present

management of DBH, reside in Germany. *Id.* ¶ 11 Persuading these witnesses to travel from

Germany to Illinois will be difficult and expensive. Furthermore, the bulk of the documents that

are likely to be relevant in this case are exclusively in German, and located exclusively in

Germany (and filed in an official register of the Court in Dusseldorf), as well.

      ***Second,*** Wasendorf similarly would be inconvenienced by proceeding in a

German forum. Although courts have traditionally given weight to the plaintiff's interest in

choosing his forum, here, Mr. Wasendorf would benefit from the same access to German

witnesses, documents and other evidence as Mr. Gumpel. *See Williams v. REP France*, No. IP-

97-0750-C-T/G, 2001 WL 1385885, at *5 (S.D.Ind. Sept. 13, 2001) (acknowledging difference

from *Asahi* in that plaintiff is resident of Indiana but nevertheless plaintiff's interests are outweighed by location of relevant evidence in France). In fact it is difficult to imagine how Mr. Wasendorf could hope successfully to persuade an Illinois jury of the merits of his case without access to German witnesses and evidence. *See U.S. Vestor, LLC v. Biodata Information Tech. AG*, 290 F.Supp.2d 1057, 1068 (N.D.Cal. 2003) (personal jurisdiction is an unreasonable hardship on German defendants when witnesses and evidence were in Germany and underlying transaction was governed by German law).

Importantly, even if Wasendorf were unwilling to bring suit in Germany, dismissal of the claims against individual defendant Daniel Gumpel would not deny Wasendorf effective relief in Illinois. Indeed, Wasendorf could still proceed against the principal defendants, Ralf McQuaye and DBH. In *Soper v. Jurid Werke,* this court likewise dismissed a claim against two secondary German defendants for lack of personal jurisdiction, concluding that the undue burden on defendants outweighed any burden on the local plaintiff because the plaintiff could still obtain relief from the primary defendant. *Soper v. Jurid Werke GMBH*, No. 89 C 6248, 1990 WL 119414, at *4, (N.D.Ill. Aug. 10, 1990).

In considering how much weight to give to the convenience of the plaintiff, it is worth noting that this Iowa citizen is a sophisticated financial professional who made a conscious decision not only to invest in a closely-held German corporation, but to join its Supervisory Board and to travel to Germany several times a year for board meetings and shareholder meetings, all with the idea of exerting active managerial control. (Cmpl. ¶¶ 1, 13). There are many reasons to engage in such business dealings, but convenience is not one of them.

***Third,*** at its heart, this case involves questions relating to German regulations and corporate governance, which will require a detailed inquiry into substantive German law. For example, regardless of whether the Court were to apply German or Illinois law to Wasendorf's

fraud claims, application of German law would nonetheless be central in determining issues such as: (a) the truth or falsity of statements regarding the purchase, transfer and ownership of shares; (b) the requisite scienter of defendants with regard to those statements; (c) the existence and scope of duties of one member of a Supervisory Board to another; and (d) the existence and scope of duties of corporate officers to the corporation and its shareholders. German courts are much better equipped to undertake such an inquiry. *See e.g., U. S. Vestor,* 290 F. Supp. 1057.

   ***Finally,*** Illinois' interest in protecting an Iowa citizen allegedly harmed in Iowa is substantially outweighed by Germany's interest in the conduct of a German corporation located in Germany and of the German management and Supervisory Board members who reside in Germany. Wasendorf's sole connection to Illinois is that he maintains an office in Illinois and conducts some business in the state. (Cmpl. ¶ 1) Illinois certainly has an interest in discouraging allegedly fraudulent communications within its borders, even if those communications are directed to citizens of other states, and any alleged financial harm is caused elsewhere. Yet this interest pales in comparison to Germany's interest in the conduct alleged here.

   For all of these reasons, the notions of fair play and substantial justice are not served by forcing Daniel Gumpel, an individual defendant, to litigate this predominantly German dispute in Illinois.

## II.   ALTERNATIVELY, WASENDORF'S COMPLAINT SHOULD BE DISMISSED UNDER THE DOCTRINE OF *FORUM NON CONVENIENS.*

   Should this Court conclude that the alleged actions by Mr. Gumpel are sufficient to establish personal jurisdiction, Wasendorf's complaint against this individual German defendant should nonetheless be dismissed under the doctrine of *forum non conveniens.* "The principle of *forum non conveniens* is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 507 (1947) (emphasis added). Dismissal on *forum non*

*conveniens* grounds "will ordinarily be appropriate where trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court, and where the plaintiff is unable to offer any specific reasons of convenience supporting his choice." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249 (1981); *Kamel v. Hill-Rom Company*, 108 F.3d 799, 802 (7th Cir. 1997) (dismissal warranted where "it best serves the convenience of the parties and the ends of justice").

In assessing *forum non conveniens*, a two-step inquiry is required: first the court must decide whether an adequate alternative forum exists; if there is such a forum, then the court must weigh the relevant public and private interests which favor one forum over the other. *Kamel*, 108 F.3d at 802-03 (citing *Gilbert*, 330 U.S. at 508; *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947); *Piper Aircraft*, 454 U.S. at 254). Here, Germany clearly constitutes an adequate alternative forum, and both public and private interests favor Germany.

### A.  An Adequate Alternative Forum Exists: Germany.

The Seventh Circuit has held that "[a]n alternative forum is available if all parties are amenable to process and are within the forum's jurisdiction," and that "[a]n alternative forum is adequate when the parties will not be deprived of all remedies or treated unfairly." *Kamel*, 108 F.3d at 803 (citations omitted). In this case, Germany is available as an alternative forum. As a German citizen residing in Germany, Mr. Gumpel -- as well as the other individual defendants and German corporation DBH -- are within Germany's jurisdiction and subject to process. (J. Zirkel Aff. ¶ 3, Ex. B) Germany is also a more than adequate forum for Wasendorf's claims. Germany has laws forbidding fraud, in particular fraud against shareholders and investors, and the Regional Court in Germany would hear claims of the sort brought here by Wasendorf.[6] *Id.*

---

[6] Plaintiff may attempt to argue that Illinois law is more stringent in its protection than the law of Germany. This Court need not conduct such an inquiry, however. First, it is far from clear that Illinois law would apply to plaintiff's claims. Second, even if German law were less favorable to the plaintiff, this would not render Germany inadequate as a forum. "[T]he possibility of a change in substantive law should ordinarily not be given conclusive or even substantial weight in the *forum non conveniens* inquiry" unless "the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all." *Piper Aircraft*, 454 U.S. at 247, 254 (emphasis added).

In addition, the Regional Court could compel the attendance of relevant witnesses and evidence. *Id.* ¶ 4. German courts routinely apply these laws on behalf of foreign plaintiffs. *Id.* ¶ 5.

**B.    A Balancing of Both Private and Public Interests Favors the German Forum.**

Once the court determines that an adequate alternative forum exists, it must balance the private and public interest factors involved in that particular case. *Kamel*, 108 F.3d at 803. This inquiry is similar to the "fair play and substantial justice" inquiry conducted as part of the personal jurisdiction analysis -- it is a fact-specific inquiry that assesses the burdens on both parties, as well on the courts in the relevant states. A defendant's prior minimum contacts and purposeful availment of the forum, however, play little to no role in the analysis. *Compare Burger King*, 471 U.S. 462, *with Piper Aircraft*, 454 U.S. 235.

In this sense the *forum non conveniens* doctrine is forward looking, evaluating not whether personal jurisdiction is a fair and just consequence of a defendant's alleged prior actions, but rather whether a forum other the one chosen by the Wasendorf would be significantly less burdensome for all affected parties (including third parties and witnesses). Under this analysis, both the private and public interests favor the German forum in this case.

**1.    Private interests favor the German forum.**

The *Gilbert* Court outlined several factors to be considered when evaluating the private interests of the parties: "a) the relative ease of access to sources of proof; b) availability of compulsory process for attendance of unwilling [witnesses]; c) the cost of obtaining [the] attendance of willing, witnesses;...and d) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gilbert*, 330 U.S. at 508. Together, these factors strongly favor a German forum.

"[C]onvenience to witnesses is a significant consideration under a *forum non conveniens* analysis." *Apotex Corp v. Istituto Biologico Chemicoterapico,* No. 02 C 5345 (2003 WL 21780965) at *9 (N.D.Ill. July 30, 2003) (emphasis added). As discussed above, with the

12

exception of Wasendorf, all of the relevant witnesses, including the defendants, other past and present members of the Supervisory Board, and past and present management of DBH, live in Germany and speak German. This includes the DBH employees that Wasendorf alleges participated in the mismanagement of the company, including Robert Kopp. (Gumpel Aff. ¶ 11) It is uncertain whether the relevant witnesses could be compelled to testify in Illinois. And securing the attendance of such a large number of witnesses, even if cooperative, will be expensive and inconvenient. In contrast, their attendance could be secured by a German Court (J. Zirkel Aff. ¶ 4)

In addition, the location of documentary evidence must also be considered. *See Koster*, 330 U.S. at 832-33 (complaint dismissed when corporate books and records were all in alternative forum and plaintiff could show "not a single fact provable by record or witness within the district or state where he has brought suit"); *Apotex* at *9 (compliant dismissed to Italy when "many relevant documents . . . are located in Italy"). The vast majority of documents relevant to Wasendorf's allegations are located in the official register of the Court in Dusseldorf in Germany (including, for example, the stock registers, the trade register, and other internal DBH documents) and would require translation from German into English.

In short, there are significant burdens associated with litigating in Illinois, and they fall equally on Wasendorf and on the defendants, including Mr. Gumpel.

### 2. Public Interests Likewise Favor the German Forum.

The Seventh Circuit has established several factors that should be considered in determining the respective interests of the possible forums:

- the administrative difficulties stemming from court congestion;

- the local interest in having localized disputes decided at home;

- the interest of having the trial of a diversity case in a forum that is at home with the law that must govern the action;

- the avoidance of unnecessary problems in conflicts of laws or in the application of foreign law; and

- the unfairness of burdening citizens in an unrelated forum with jury duty.

*Kamel*, 108 F.3d at 803 (citing *Piper Aircraft*, 454 U.S. at 241 n. 6). Here, the primary burden on an Illinois court involves the application of foreign law.

As discussed above, an analysis of German law will be central to the resolution of Wasendorf's claims. If the case remains in Illinois, it is likely that substantive German law will apply to Wasendorf's tort claims. Even if the Court determined that substantive Illinois law were applicable -- which the Court need not determine for purposes of this motion -- German law would still be critical in establishing or refuting the required elements of Wasendorf's claims.[7] For example, Wasendorf alleges, among other things, that:

- He "was not told by Becker and Gumpel, who as members of the Supervisory Board, had a duty to share this information with Wasendorf, who was at the very least a fellow member of the Supervisory Board, that Defendants were not paying for their own subscriptions." (Cmpl. ¶ 24)

- "Becker and Gumpel had a continuing affirmative duty to disclose to Wasendorf that his purchase of May, 2001 was not reflected on DBH's books." *Id.* ¶ 27

- "All Supervisory Board members agreed on October 16, 2003, that the Company should be liquidated. Despite the unanimity, Gumpel and Becker did not take any steps to follow Wasendorf's instructions or their own business judgment and liquidate the Company." *Id.* ¶ 38

Mr. Gumpel, however, is a Supervisory Board member of a German corporation governed by German law. Wasendorf would first need to prove that such duties existed under German law, in order to establish the elements of fraud under Illinois law. Likewise, Wasendorf's complaint

---

[7] Illinois applies the "significant relationship" test of the Restatement (Second) of Conflict of Laws § 148(2). *Palmer v. Beverly Enterprises* 823 F.2d 1105 (7th Cir. 1987). The court will consider among others things "where the plaintiff acted in reliance upon the defendant's representations, ...where the plaintiff received the representations, ...where the defendant made the representations, ...the domicil[e], residence, nationality, place of incorporation and place of business of the parties," as well as "the place where the tangible thing which is the subject of the transaction between the parties was situated at the time." Restatement (Second) of Conflict of Laws § 148(2). Of the three relevant states--Illinois, Iowa, and Germany--far and away the most significant contacts regarding the allegations in the complaint are with Germany.

is filled with allegations that Gumpel, as well as other defendants, failed to disclose certain information to him. Again, whether a German Supervisory Board member is obligated to disclose certain information, or would believe certain information to be "material," would need to be established based on the German laws applicable to DBH in the first instance. Only then could Wasendorf attempt to establish fraud by omission under the laws of Illinois.

Finally, as discussed above, Illinois's interest in protecting an Iowa citizen harmed in Iowa is outweighed by Germany's interest in regulating its own corporations, in monitoring the behavior German executives and Supervisory Board members, and in protecting the interests of shareholders --both foreign and domestic -- in German corporations.

## CONCLUSION

For all of the reasons set forth above, defendant Daniel J. Gumpel respectfully requests that the Court dismiss Wasendorf's complaint against him for lack of personal jurisdiction. In the alternative, defendant Gumpel asks the Court to dismiss the complaint based on the doctrine of *forum non conveniens.*

Dated: July 27, 2004                          Respectfully submitted,

Garrett B. Johnson
Donna M. Welch
KIRKLAND & ELLIS LLP
200 E. Randolph Drive
Chicago, Illinois 60601
312-861-2000
312-861-2200 (facsimile)

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing Memorandum of

Law in Support of Defendant Daniel J. Gumpel's Motion to Dismiss, and Affidavits of Daniel J.

Gumpel and J. Zirkel, were served on the following by facsimile transmission on this the 27th of

July, 2004:

>    Joel J. Bellows
>    Christopher L. Gallinari
>    Helen B. Bloch
>    Bellows and Bellows, P.C.
>    79 West Monroe Street
>    Suite 800
>    Chicago, Illinois 60603
>    Facsimile: 312-332-3340

_____
Donna M. Welch

# *See Case File for Exhibits*