## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

**FILED**

**NOV 16 2004**

**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

| | | |
|---|---|---|
| RUSSELL R. WASENDORF. SR. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 04 C 1904 |
| | ) | |
| DBH BROKERHAUS AG, | ) | JUDGE HARRY LEINENWEBER |
| RALF A. MAC GRANAKY-QUAYE, | ) | MAGISTRATE JUDGE NAN NOLAN |
| DANIEL J. GUMPEL, | ) | |
| JURGEN BECKER, | ) | |
| | ) | |
| Defendants. | ) | |

**DOCKETED**

**NOV 17 2004**

### REPLY TO DEFENDANT WASENDORF'S RESPONSE TO DANIEL J. GUMPEL'S MOTION TO DISMISS

Russell Wasendorf chose to invest in and become a Supervisory Board member of DBH—a German company with a banking license regulated by German law. As an investor and Supervisory Board member, Wasendorf chose to travel to Germany on many occasions. On other occasions, he opted to participate in meetings from his U.S. business offices in Illinois. Defendant Daniel Gumpel was also a Supervisory Board member of DBH. His primary interactions with Wasendorf all arose out of Wasendorf's own decisions. When Wasendorf traveled to Germany, they participated together in shareholder and Supervisory Board meetings. When Wasendorf participated via telephone from the U.S., he and Gumpel, along with other Supervisory Board members, were always connected to conference calls initiated by DBH.

DBH is now defunct. Unhappy with the outcome of his investment, Wasendorf attempts to subject DBH and several individual defendants, including Gumpel—an individual defendant who lives and works in Germany and who has no ties whatsoever to Illinois—to a lawsuit here in Illinois. Wasendorf's own affidavit and response, however, highlight the fact that

17

Gumpel's attenuated contacts with Illinois—all at the behest and for the benefit of Wasendorf—are insufficient to compel him to defend himself in Illinois.

## I.  WASENDORF HAS NOT CARRIED HIS BURDEN OF DEMONSTRATING THAT THIS COURT HAS PERSONAL JURISDICTION OVER GUMPEL.

Plaintiff Russell Wasendorf has not alleged that Daniel Gumpel purposefully established the 'minimum contacts' with Illinois necessary for this Court to exercise jurisdiction over him. *Burger King v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945)). Nor has he shown that assertion of personal jurisdiction would comport with traditional notions of "fair play and substantial justice." *Burger King*, 471 U.S. at 476. At best, Wasendorf has established that personal jurisdiction might be appropriately exercised over other defendants who had far more contact with the State of Illinois and who played far more significant roles in the alleged fraud. Of course, it would be inappropriate for this Court to exercise jurisdiction over Gumpel based upon the conduct of these other defendants. And, given that the limited contacts between Gumpel and Illinois were initiated by Wasendorf and these other defendants, the suit against Defendant Gumpel should be dismissed for lack of personal jurisdiction.

### A.  Regardless of the Activities of the Other Defendants, Gumpel Did Not Establish the Requisite Minimum Contacts with Illinois.

As Wasendorf acknowledges, in order for this Court to exercise jurisdiction over Gumpel, Wasendorf must establish that Gumpel purposefully established minimum contacts with Illinois such that Gumpel could have "reasonably anticipate[d] being haled into court" in Illinois. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). "Each defendant's contacts with the forum State must be assessed individually" in order to determine whether it is appropriate to exercise personal jurisdiction over a particular defendant. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984) (citing *Rush v. Savchuk*, 444 U.S. 320, 332

(1980)). As the Supreme Court has clearly instructed, "the requirements of *International Shoe*...must be met as to each defendant over whom a state court exercises jurisdiction," and it is "plainly unconstitutional" for a court to aggregate the defendants' contacts with the forum State in determining whether it has jurisdiction over an individual defendant. *Rush*, 444 U.S. at 332.

Yet that is precisely what Wasendorf invites this Court to do. Indeed, Wasendorf cites only one clear example of purposeful availment of the privilege of conducting activities in Illinois, and it involves not Gumpel but defendant MacGranaky-Quaye ("McQuaye"), who traveled to Chicago in 1999 to solicit Wasendorf's initial investment in DBH. (Resp. Br. at 5-6; Wasendorf Aff. ¶¶ 6-7) Wasendorf did not become acquainted with Gumpel until some months later when Wasendorf traveled to Düsseldorf, Germany to participate in a DBH shareholder meeting. (Wasendorf Aff. ¶ 8; Gumpel Aff. ¶ 4) At that meeting both men were elected to the Supervisory Board of DBH; prior to that, Gumpel had been only a shareholder in the firm. (Gumpel Aff. ¶ 4) As Wasendorf concedes, almost all of Gumpel's subsequent contacts with Wasendorf, and thus with Illinois, took place at DBH shareholder and Supervisory Board meetings held in Germany. (Wasendorf Aff. ¶¶ 10-11) Wasendorf elected to attend nearly all of these in person in Germany, (Gumpel Aff. ¶ 6), and according to Wasendorf's own statement participated in others by telephone. (Wasendorf Aff. ¶¶ 10-11) Gumpel cannot be said to have "knowingly reached out" to the State of Illinois, *Daniel J. Hartwig Assoc., Inc. v. Kanner*, 913 F.2d 1213, 1219 (7th Cir. 1990), merely by participating in meetings in Germany in which an Illinois resident also participated.

The small handful of other communications between Wasendorf and Gumpel were generally of a limited and personal nature, (Gumpel Aff. ¶ 7), and were too "fortuitous" or "attenuated" to form the basis of this Court's exercise of personal jurisdiction. *Burger King*, 471

3

U.S. at 475. Indeed the limited email and telephone communication between Wasendorf and Gumpel was not "purposefully" directed at Illinois at all. First, messages sent by Gumpel to Wasendorf at the email address rrwasendorfsr@pfmail.com, were not directed to Illinois. They were directed to a U.S. email address, and they could have been received by Wasendorf in Iowa, in Illinois, or wherever else in the world he chose to access them. Second, although Gumpel spoke to Wasendorf by telephone, presumably while Wasendorf was in Illinois, he never himself placed a call to an Illinois telephone number. Rather, he either answered calls placed by Wasendorf or joined calls with Wasendorf initiated by DBH or other third parties. (Gumpel 11/16/04 Aff. at ¶ 1, Ex. C)

Such contacts are insufficient to form the basis for personal jurisdiction over Gumpel. Wasendorf's cases are not to the contrary. He argues that *Kalata v. Healy*, 728 N.E.2d 648, 655 (Ill.App. 2000), and *Spriggs & Co., Inc v. United Industries Corp.*, 1986 WL 15129, *3 (N.D. Ill. Dec. 19, 1986), demonstrate that this Court may assert personal jurisdiction over a defendant who "merely engaged in telephone and mail communications with the plaintiff" in Illinois. (Response Br. at 8) Wasendorf's recitation ignores the fact that the defendant in *Kalata* had "frequently used the telephone and mail system to carry out the completion of [a] contract between the two parties," which the defendant herself then breached. *Kalata*, 728 N.E.2d at 655. The defendant in *Spriggs* similarly entered into "a contract with an Illinois [employment] agency," knowing full well that "the agency would perform its services from its offices in Illinois," and subsequently modified that contract through repeated telephone calls into the state. *Spriggs*, 1986 WL 15129, *3. Gumpel is not alleged to have induced Wasendorf to enter into any contract, and the performance of any agreements between Wasendorf and defendants other

than Gumpel was to have been carried out entirely in Germany, not Illinois. *Kalata* and *Spriggs* are therefore not instructive here.

Gumpel's single visit to Illinois at the behest of Wasendorf in June 2001 is similarly insufficient to justify this Court's exercise of jurisdiction. In his response brief and affidavit, Wasendorf goes to great lengths to paint this visit as a series of substantive business meetings during which Gumpel "induce[d]" Wasendorf "to invest more money into DBH."[1](Wasendorf Aff. ¶¶ 19-21) Interestingly, Wasendorf points to no specific statements by Gumpel inducing his further investment in DBH, and he does not challenge most of Gumpel's sworn statements about this single visit, including that:

- Gumpel traveled to Chicago with his son for a long weekend at Wasendorf's behest and expense. (Gumpel Aff. ¶ 8)

- The great majority of the weekend was spent on tourist activities such as tours of the Chicago Stock Exchange and Mercantile Exchange, sightseeing, a boat excursion, dining, and so on. During these times, DBH and business matters were not discussed at all. (Gumpel Aff. ¶ 8)

- Wasendorf requested that Gumpel travel to Chicago to attend a single 2 ½ hour meeting on Saturday, June 23. (Gumpel Aff. ¶¶ 9-10)

- Wasendorf also brought members of DBH management to the meeting in Chicago. They arrived only the afternoon of the meeting and were present for part, but not all, of the meeting. (Gumpel Aff. ¶ 10)

- The sole purpose of the meeting was to persuade Wasendorf's business associates from Florida to purchase some of Wasendorf's stock in DBH. (Gumpel Aff. ¶¶ 9-10) Gumpel did not know Wasendorf's business associates at all prior to the Chicago meeting. (Gumpell Aff. 11/16/04 ¶ 3)

- Wasendorf was the only person who talked to his business associates about DBH. (Gumpel Aff. ¶ 9)

---

[1]  If after reviewing Wasendorf's and Gumpel's submissions the Court finds that there are disputed facts which are material to the issue of personal jurisdiction, then the Court should hold an evidentiary hearing to resolve those disputes. Hyatt Intern. Corp. v. Coco, 302 F.3d 707, 713 (7th Cir. 2002). At such a hearing Wasendorf would bear the burden of proving by a preponderance of the evidence that Gumpel has sufficient contacts with Illinois to justify the Court's exercise of personal jurisdiction over him. Id.

Wasendorf's strained characterization of this single visit to Illinois lacks credibility. First, Wasendorf does not dispute that the sole purpose of the 2 ½ hour meeting on Saturday, June 23, attended by Wasendorf and his business associates from Florida, was to help Wasendorf to persuade those associates to purchase shares held by Wasendorf. It thus makes no sense that Wasendorf was, on the one hand, attempting to sell his DBH shares and, on the other, discussing additional purchases of DBH shares with Gumpel. Second, Wasendorf omits from his version of events the fact that less than two months before this visit, Wasendorf made a capital contribution to DBH purchasing 12,758 shares of DBH stock at a cost of 623,738.62 Euros in Düsseldorf, Germany. (Gumpel Aff. 11/16/04 ¶ 2) As a result of this capital contribution, DBH had no need for a further capital increase at the time of the meeting in Chicago, and in any event the shareholders had not authorized any further capital increase. Without such authorization, Gumpel was not in a position even to offer additional shares to Wasendorf in June 2001. (*Id.*)

What is more, Wasendorf does not contradict Gumpel's assertion that this visit was requested and paid for by Wasendorf.[2] As a result, regardless of his attempts to characterize the visit as a Supervisory Board meeting, or his attempt to suggest that Gumpel encouraged the purchase of shares by Wasendorf at this meeting, this single visit should not be considered sufficient to exercise personal jurisdiction. *See, e.g., Minge v. Cohen*, 2000 WL 45873, *2 (E.D. La. 2000) (court lacked personal jurisdiction over defendant where contacts between the defendant and the forum state were initiated by plaintiff or at plaintiff's behest).

---

2    Similarly, setting aside shareholder and Supervisory Board meetings held in Germany, the email and telephone contact that occurred between Wasendorf and Gumpel was at Wasendorf's urging, in order for Gumpel to answer any questions Wasendorf might have.

**B.** **It Would Offend Traditional Notions of Fair Play and Substantial Justice if this Court were to Exercise Personal Jurisdiction over Defendant Gumpel.**

    **1.** **Gumpel should not have anticipated being haled into court in Illinois.**

In arguing that "Defendants" should have anticipated being haled into court in Illinois, Wasendorf ignores the fact that, based on his own allegations, Gumpel had substantially fewer and less significant contacts with the state than did other defendants. McQuaye might reasonably have anticipated being sued in Illinois, for example, based on allegations that he intentionally reached out to the forum by soliciting Wasendorf's initial investment in DBH during a meeting in Chicago. Gumpel, however, was a mere investor in DBH at that time, and he only attained a Supervisory Board position several months later when he and Wasendorf were both elected. Unlike McQuaye, Gumpel's principal contacts with Wasendorf were limited to their mutual participation in shareholder and Supervisory Board meetings held in Germany. (*See* Wasendorf Aff. ¶ 10). In addition, Wasendorf alleges that he "advised Gumpel" about additional capital contributions he made to DBH and that Gumpel then would request that Wasendorf wire the money. (Wasendorf Aff. ¶ 16)

    Wasendorf's affidavit makes clear that the negotiations regarding Wasendorf's purchases of shares and the potential "takeover" of DBH by PFG were between Wasendorf and McQuaye—not Gumpel. Indeed, Wasendorf's own exhibits indicate that Gumpel did nothing more than facilitate the communications between McQuaye and Wasendorf. (*See, e.g.*, Wasendorf Aff. ¶¶ 14, 17; Ex. A (noting in response to Wasendorf's email that "I understand from Ralph [McQuaye] that he wants to talk to you about the details and what is meant by this offer"); Ex. B (noting that "the compromise, that you have agreed to, has been accepted by Ralph

[McQuaye] as well))[3]  Gumpel's contacts with Wasendorf stand in contrast to the contacts at issue in *Kalata*, 728 N.E.2d at 655, and *Spriggs*, 1986 WL 15129 at*3, in which the defendants used mail and telephone communications to form binding contracts with plaintiffs in Illinois.  At best, Wasendorf has alleged that Gumpel's communications with him facilitated McQuaye's efforts to induce Wasendorf's investment in DBH.  This may support this Court's exercise of jurisdiction over McQuaye and DBH, but not over Gumpel.  In short, Gumpel's contacts with Illinois "must be assessed individually" in determining whether it is appropriate for this Court to exercise personal jurisdiction.  *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984).  The extent of McQuaye's contacts with Illinois therefore says nothing about whether it is appropriate to exercise personal jurisdiction over Gumpel, and it is clear that Gumpel's contacts were not sufficient to put him on notice that he might be sued in Illinois.

> **2.** **Defending this suit in Illinois would place an undue burden on Gumpel.**

Defending this suit in Illinois would place an extraordinary and inequitable burden upon Gumpel, an individual defendant who is a citizen and resident of Germany.  Wasendorf's reliance upon *Interlease Aviation Investors II (Aloha) L.L.C.. v. Vanguard Airlines, Inc.*, 262 F. Supp. 2d 898, 911 (2003), for the proposition that the burden would be minimal because "Chicago is a major metropolitan area" to which Gumpel has previously traveled, is misplaced.  The defendants in *Interlease* were from California, not Germany, and they had made more than one trip to Illinois at their own expense in furtherance of their alleged scheme.  *See id.*  Gumpel, on the other hand, is alleged to have visited Illinois only once, and that was at Wasendorf's invitation and expense.  If forced to defend this suit in Illinois, Gumpel will

---

[3]  Wasendorf's allegations that "on other occasions Gumpel contacted me in Chicago by telephone and email to encourage me to purchase more DBH shares," is wholly unsupported.  Although he cites to the text of an email attached as Ex. B, that email nowhere suggests that <u>Gumpel</u> ever encouraged Wasendorf's investment in DBH.

personally bear the substantial costs of traveling here from a foreign country. He will also be forced to secure at his own expense the presence of witnesses and documentary evidence necessary to his defense, almost all of which are located in Germany. (Gumpel Aff. ¶ 11) *See U.S. Vestor, LLC v. Biodata Information Technology AG*, 290 F. Supp. 2d 1057, 1067-68 (N.D. Cal. 2003) (personal jurisdiction placed unreasonable hardship on German defendants because witnesses and evidence were in Germany and the transactions were governed by German law).

Wasendorf would not be similarly burdened if the case against Gumpel were dismissed. First, he could still proceed in Illinois against the principal defendants, McQuaye and DBH, both of whom are alleged to have contacts with Illinois that are at least arguably sufficient to warrant this Court's exercise of personal jurisdiction. *See Soper v. Jurid Werke GmbH*, No. 89 C 6248, 1990 WL 119414, *4 (N.D. Ill. Aug. 10, 1990) (dismissing claims against secondary German defendants for lack of personal jurisdiction where plaintiff could still proceed in Illinois against primary defendant).[4] Wasendorf could also proceed against Gumpel in Germany, the forum in which he chose to invest and become a Board member and where the bulk of the evidence and witnesses are located in any event. This would present no more inconvenience to him than did his many trips to Germany to exercise managerial control over DBH, a closely held German corporation that he consciously invested in despite its location.

---

[4] The fact that *Williams v. Rep France*, 2001 WL 1385885, *5 (S.D. Ind. Sept. 13, 2001) (unpublished), and *Soper*, 1990 WL 119414, are stream of commerce cases does not render them inapposite. *Williams* makes clear that the location of key evidence in a foreign jurisdiction makes the efficient resolution of the controversy in the forum state unlikely and thus weighs in favor of dismissal. *Soper* demonstrates that dismissal of a secondary defendant does not place an undue burden upon the plaintiff if he can obtain relief from the principal defendants in the forum of his choice. These principals are equally at home in the present case and clearly weigh in favor of dismissal: the evidence necessary to resolve Wasendorf's claims against Gumpel is predominately in Germany, and Wasendorf's ability to obtain relief from McQuaye and DBH would be unaffected by Gumpel's dismissal.

9

**3.    Germany's interest in this controversy outweighs that of Illinois.**

Contrary to Wasendorf's contention, Illinois' passing interest in this action is

substantially outweighed by Germany's interest in policing the conduct of a German corporation

located in Germany and of its German managers and Supervisory Board members.[5]  Although he

maintains offices in Chicago for several companies which are not parties, Wasendorf is not a

citizen of Illinois.  The interests impacted by the misconduct alleged in this action are entirely

personal to Wasendorf; no Illinois business is a party to this suit.  While Wasendorf is correct to

point out that the location of his "pocketbook" in Iowa would not alone be sufficient to confer

jurisdiction upon that state, *see Lifeway Foods, Inc. v. Fresh Made, Inc.*, 940 F. Supp. 1316,

1320 (N.D. Ill. 1996), it does not follow that the lack of impact from the alleged misconduct in

Illinois has "no bearing on whether Illinois may assert jurisdiction over Defendants."  (Response

Br. at 10).  Jurisdiction may be proper in the state where the effects of an alleged tort are felt,

*Calder v. Jones*, 465 U.S. 783 (1984), and in this case the only injury alleged is to Wasendorf's

personal finances.  It is therefore relevant that he does not maintain his personal bank accounts in

Illinois and that no Illinois company was directly injured by the alleged misconduct.

Unlike defendant McQuaye, Daniel Gumpel has had only very limited contact

with Illinois, and the bulk of that contact resulted from Wasendorf's unilateral decision to invest

and participate in the management of a German company in which Gumpel also invested.

Whether or not it is reasonable for this Court to provide a forum for Wasendorf's suit against

---

[5]    Wasendorf relies on *Zazove v. Pelikan, Inc.*, 761 N.E.2d 256, 264 (Ill.App. 2001), for the proposition that
Germany lacks a compelling interest in a controversy involving a defunct German corporation.  (Response Br.
at 9)  *Zazove*, however, merely stands for the unremarkable proposition that it is not inherently unreasonable or
unfair to hale an insolvent foreign defendant into court in Illinois.  Gumpel argues not that the insolvent DBH
will be unfairly burdened if forced to defend this suit in Illinois but that Germany's inherent interest in policing
the conduct of its executives and corporations—insolvent or not—outweighs Illinois' interest in providing a
forum to an Iowa investor in a foreign corporation.  This is all the more true given that numerous German
citizens including Gumpel also lost money when DBH failed.

McQuaye and DBH, Gumpel's contacts with Illinois were of a far more limited and insignificant nature, and defending this suit in Illinois would represent a substantial and inequitable burden upon him. Traditional notions of fair play and substantial justice demand that the action against Gumpel be dismissed so that it may proceed, if at all, in Germany where it belongs.

## II.    IN THE ALTERNATIVE, DEFENDANT GUMPEL HAS ESTABLISHED THAT THE SUIT AGAINST HIM SHOULD BE DISMISSED UNDER THE DOCTRINE OF *FORUM NON CONVENIENS*.

Even if the exercise of personal jurisdiction were permissible in Illinois, it is clear that Germany would provide a far more appropriate forum for the adjudication of this controversy. Gumpel is amenable to suit in Germany where the Regional Courts are charged with hearing claims of this sort. (J. Zirkel Aff. ¶ 3, Ex. B) The majority of witnesses and evidence relevant to Wasendorf's suit against Gumpel are in Germany, not Illinois, and a German court would be best able to compel their attendance or production. (*Id.* at ¶ 4) Moreover, Wasendorf has no response to the fact that the interpretation of German law—which will be central to determining the viability of Wasendorf's claims—is a task best handled by German courts.[6] *See, e.g., U.S. Vestor*, 290 F. Supp. 2d at 1068. Finally, Germany has a clear and compelling interest in policing the conduct of its corporations and citizens, whereas Illinois has at best a passing interest in preventing fraud upon a citizen of Iowa.

### A.    Germany Constitutes an Adequate Alternative Forum for This Action.

An adequate alternative forum is available if all parties are amenable to process and are within the forum's jurisdiction and if the parties will not be deprived of all remedies or treated unfairly in the alternative forum. *Kamel v. Hill-Rom Company*, 108 F.3d 799, 802 (7th

---

[6]    As discussed in Gumpel's opening brief, interpretation of German law will be necessary, for example, to determine: (a) the truth or falsity of statements regarding the purchase, transfer, and ownership of shares; (b) the requisite scienter of defendants with regard to those statements; (c) the existence and scope of duties of one member of a Supervisory Board to another; and (d) the existence and scope of duties of corporate officers to the corporation and its shareholders.

Cir. 1997). Wasendorf argues that Germany would be an inadequate forum, asking this Court to

find that German discovery procedures are so inadequate that "only in an American court can

[he] have his best shot at uncovering the full extent of Defendants' wrongdoing." (Response Br.

at 12) He does not point to any authority in support of his position.

Although Wasendorf is correct to state that discovery rules may be relevant to the

adequacy of a foreign forum, *see, e.g. ISI International, Inc. v. Borden Ladner Gervais*, 256 F.3d

548, 554 (7th Cir. 2001) (remanding for consideration of adequacy of Canadian forum), he

ignores the overwhelming balance of authority holding that a foreign court is capable of serving

as an adequate alternative forum in spite of having less liberal discovery rules than an American

court. *See, e.g., Mercier v. Sheraton Int'l, Inc.*, 981 F.2d 1345, 1352-53 (1st Cir.1992) ("[A]n

alternative forum ordinarily is not considered 'inadequate' merely because its courts afford

different or less generous discovery procedures than are available under American rules.").

Moreover, courts routinely hold that Germany is an adequate forum in spite of differences

between its discovery process and ours. *See, e.g., Leetsch v. Freedman*, 260 F.3d 1100, 1103

(9th Cir. 2001); *Lony v. E.I. Du Pont de Nemours & Co.*, 886 F.2d 628, 633 (3d Cir. 1989);

*Bonzel v. Pfizer, Inc.*, 2004 WL 2475564, *9 (D. Minn. Nov. 2, 2004); *U.S. Vestor*, 290 F. Supp.

2d at 1068; *Helog AG v. Kaman Aerospace Corp.*, 228 F. Supp. 2d 91, 93 (D. Conn. 2002); *Hull

753 Corp. v. Elbe Flugzeugwerke GmbH*, 58 F. Supp. 2d 925, 928-929 (N.D. Ill. 1999); *NCA

Holding Corp. v. Norddeutsche Landesbank Girozentrale*, No. 96-9321, 1999 WL 39539, *2-4

(S.D.N.Y. Jan. 28, 1999).

Wasendorf hints that McQuaye has illegally destroyed or hidden documents in

Germany and argues that only an American court is likely to secure the production of these

documents. (*See* Response Br. at 12) He does not explain how an American court with

questionable authority in Germany and sitting thousands of miles away would be better able than a German court to keep such "chicanery" under control. Nor does he explain why the difficulty he foresees in securing documents from McQuaye provides an argument for retaining jurisdiction over Gumpel. Moreover, many of the documents relevant to this matter may be in the hands of third parties in Germany over whom this Court has no jurisdiction; obtaining discovery from such parties is therefore the unique province of the German courts. (*See* J. Zirkel Aff., Ex. B ¶ 4 (German Regional Court can compel attendance of witnesses and production of evidence in Germany)) The weight of authority clearly indicates that Germany would provide an adequate alternative forum for this action.

**B.** **The Balance of Private and Public Interests Clearly Favors the German Forum.**

Both parties agree that in determining whether Wasendorf's suit against Gumpel should be dismissed under the doctrine of *forum non conveniens*, the Court must carefully weigh both private and public interest factors. The private interest factors include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses...and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). In this case, these factors clearly weigh in favor of dismissal so that this suit can proceed in a German forum.

As this Court has previously stated, "convenience to witnesses is a significant consideration under a forum non conveniens analysis." *Apotex Corp. v. Istituto Biologico Chemoterapico*, No. 02 C 5345, 2003 WL 21780965, at *9 (N.D. Ill. July 30, 2003). DBH is a German corporation which counts exactly one non-German—Russell Wasendorf—among the members of its Supervisory Board and management team. Thus, it is not surprising that most of

the witnesses necessary to the fair prosecution and defense of this action reside in Germany.[7] It is not at all clear that such witnesses could be compelled to testify in Illinois, and it is likely that many would not speak English with sufficient proficiency to testify in an American court without a translator. Moreover, the bulk of documentary evidence relevant to this case is located in Germany and would require translation from German to English. *See Apotex* 2003 WL 21780965, at *9 (dismissing where "many relevant documents...are located in Italy.").

While it would no doubt be more convenient for the plaintiff to attend court proceedings in Chicago than in Germany, this alone does not outweigh the extraordinary inconvenience that Gumpel and his German witnesses would endure to attend trial in Illinois— even if Wasendorf's "businesses would suffer in his absence during judicial proceedings in Germany..." (Response Br. at 14) It is noteworthy that Gumpel is a self-employed adviser and consultant to the financial industry in Germany. If he were forced to attend proceedings in Illinois, his business would not only suffer but would effectively cease because he has no other employees and could not serve his clients. Those clients would be forced to turn to different consultants because they would simply be unable to wait for Gumpel to return.

The public interest factors also weigh in favor of a German forum. The public interest in avoiding unnecessary problems in the application of foreign law is especially pertinent to this suit. *See Kamel*, 108 F.3d at 803. Whether this action is ultimately decided in Illinois or in Germany, it is likely that substantive German law will apply to Wasendorf's tort claims. And whether under Illinois tort law or the Illinois Securities Act, a careful analysis of German law and banking regulations would be necessary to establish or refute the elements of Wasendorf's

---

[7]  Whether Wasendorf now contends that he will call only witnesses located in the U.S. is not the issue. Defendants are entitled to call witnesses in their defense and, despite Wasendorf's assertion to the contrary, Gumpel's affidavit makes clear that the majority of the witnesses he might call are in Germany.

claims. For example, in order to prove fraud in Illinois Wasendorf would be required to demonstrate that Gumpel as a member of the Supervisory Board had an array of duties to disclose under German law and that certain nondisclosures were "material." And, while some of Wasendorf's claims arise under the Illinois Securities Act, it is noteworthy that Germany also has a comprehensive Securities Trading Act (*Gesetz über den Wertpapierhandel*). This statute and the extensive case law interpreting and applying it might well have to be interpreted by whatever court ultimately decides this dispute, as might banking and securities regulations promulgated by the German Central Bank, the European Central Bank, the German Federal Banking Supervisory Office, and the German Federal Securities Supervisory Office.

While Wasendorf is correct to state that a German court might be forced to consider elements of American law in deciding this action, the interest in having localized disputes settled at home tips the balance of public interests in favor of a German forum. *See id.* This is a suit charging misconduct by a group of German nationals in the course of running a German company located in Germany. The individual defendants are all German nationals, the bulk of the conduct relevant to this action took place in Germany, and German shareholders— including Gumpel—also lost money as a result of DBH's failure. The mere fact that Plaintiff Wasendorf resides for a portion of each week in Chicago does not outweigh the fact that this is, at its core, a predominately German dispute that should decided by a German court.

## CONCLUSION

For the reasons set forth above, defendant Daniel J. Gumpel respectfully requests that the Court dismiss Wasendorf's complaint against him for lack of personal jurisdiction. In the alternative, defendant Gumpel requests that the Court dismiss the complaint under the doctrine of *forum non conveniens.*

Dated: November 16, 2004                    Respectfully submitted,


                                            Garrett B. Johnson
                                            Donna M. Welch
                                            Mark L. Johnson
                                            KIRKLAND & ELLIS LLP
                                            200 E. Randolph Drive
                                            Chicago, Illinois 60601
                                            312-861-2000
                                            312-861-2200 (facsimile)

**EXHIBIT C**

`16 Nov 04 11:46    Daniel  J. Gumpel      0431  65443      S.2

*Fotokopie*

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

RUSSELL R. WASENDORF, SR.          )
                                    )
                Plaintiff,          )
                                    )
        v.                          )      Case No. 04 C 1904
                                    )
DBH BROKERHAUS AG,                  )      JUDGE HARRY LEINENWEBER
RALF A. MAC GRANAKY-QUAYE,          )      MAGISTRATE JUDGE NAN NOLAN
DANIEL J. GUMPEL,                   )
JURGEN BECKER,                      )
                                    )
                Defendants.         )

SECOND AFFIDAVIT IN SUPPORT OF
DANIEL J. GUMPEL'S MOTION TO DISMISS

I, Daniel J. Gumpel, state the following under oath:

1.      To the best of my recollection, I never placed any telephone calls to Wasendorf.
All telephone contacts I had with Wasendorf were either initiated by Wasendorf or initiated by
DBH and then connected to me.

2.      On April 30, 2001 Wasendorf purchased 12,758 shares of DBH through a capital
increase at a cost of 623,738.62 Euros in Dusseldorf, Germany.  The entire capital increase
authorized by the shareholders was completed at that time.  There was no need for further money
at DBH at the time of the meeting in Chicago in June 2001, and the shareholders had not
authorized any further capital increase.  Consequently, Wasendorf could not have bought
additional shares through capital increase at that time, and I could not have offered him any
additional shares through capital increase at that meeting.

16 Nov 04 11:46    Daniel  J. Gumpel         0431  65443        S.3

3.     It is my understanding that Wasendorf wanted the meeting in Chicago solely to promote the sale of his shares in DBH to his business colleagues from Florida.  It is my understanding that these colleagues had signed a letter stating their intent to purchase a substantial participation in DBH.  I had not known Wasendorf's business associates prior to the Chicago meeting.

Daniel J Gumpel

Subscribed and sworn to before
me this _____ day of November, 2004.

2

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing Reply to Defendnat Wasendorf's Response to Daniel J. Gumpel's Motion to Dismiss was served on the following on this the 16th of November, 2004:

By Facsimile:

Joel J. Bellows
Christopher L. Gallinari
Helen B. Bloch
Bellows and Bellows, P.C.
79 West Monroe Street
Suite 800
Chicago, Illinois 60603
Facsimile: 312-332-1190

By Federal Express:

Mr. Ralf A. MacGranaky-Quaye
40668 Meerbusch Lank-Latum
GERMANY

Mr. Ralf A. MacGranaky-Quaye
Breitstrabe 48
41460 Neuss
GERMANY

Donna M. Welch