# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 1904 | **DATE** | 12/10/2004 |
| **CASE TITLE** | Russell R. Wasendorf, Sr., vs. DBH Brokerhaus, et al | | |

**MOTION:**
[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 19 Jan. 05 at 9:00 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   ENTER MEMORANDUM OPINION AND ORDER: Defendants' Motions to Dismiss, or, alternatively, for a Change of Venue for forum non conveniens are DENIED.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | number of notices | Document Number |
| | No notices required. | | | | |
| | Notices mailed by judge's staff. | | | DEC 1 3 2004 date docketed | 19 |
| | Notified counsel by telephone. | | | | |
| ✓ | Docketing to mail notices. | | | JXM docketing deputy initials | |
| | Mail AO 450 form. | | | | |
| | Copy to judge/magistrate judge. | | | date mailed notice | |
| WAP | courtroom deputy's initials | | U.S. DISTRICT COURT   2004 DEC 10 PM 4: 01   Date/time received in central Clerk's Office | mailing deputy initials | |

FILED

DEC 1 0 2004

JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

RUSSELL R. WASENDORF, SR.,

          Plaintiff,

    v.

DBH BROKERHAUS AG, RALF A.
MacGRANAKY-QUAYE, DANIEL
GUMPEL, JURGEN BECKER,

          Defendants.

Case No. 04 C 1904

Hon. Harry D. Leinenweber

DOCKETED

DEC 1 3 2004

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendants' DBH Brokerhaus AG ("DBH"), Ralf A. MacGranaky-Quaye ("McQuaye"), and Daniel J. Gumpel's ("Gumpel") (collectively, the "Defendants") Motions to Dismiss, or, alternatively, Motions for Change of Venue as forum non conveniens. For the reasons set forth below, Defendants' Motions are **DENIED**.

### I. INTRODUCTION

The following relevant facts are taken in the light most favorable to Plaintiff Russell R. Wasendorf Sr. ("Wasendorf"), with any conflicting testimony in affidavits resolved in his favor. Wasendorf is a citizen of the State of Iowa. During the week, however, Wasendorf resides in Chicago, Illinois, and he conducts his business and financial affairs from a Chicago office. (Comp. ¶ 1; Wasendorf Aff. ¶ 2). DBH is a corporation organized under the laws of Germany, with its principal office in Düsseldorf,

Germany. (Comp. ¶ 2). McQuaye, Gumpel and Becker are citizens of Germany and are shareholders and members of the Supervisory Board of DBH (the "Board"). See id. ¶ 3-5, 10. Wasendorf is the principal of several commodity futures and securities companies. See id. ¶ 1.

Prior to 1999, McQuaye and DBH did a small amount of brokerage business with Wasendorf's firm. See id. ¶ 11. In early 1999, McQuaye traveled to Chicago to meet with Wasendorf to discuss their brokerage relationship and to solicit Wasendorf's investment in DBH. See id. ¶ 12. Due to McQuaye's promises to make Wasendorf a member of the Board, Wasendorf made an initial purchase of DBH stock on May 6, 1999. In December 1999, McQuaye persuaded Wasendorf's firm to advance brokerage commissions to DBH for operations.

In January 2000, McQuaye traveled to the United States to solicit Wasendorf to purchase additional shares of DBH from McQuaye directly. (Comp. ¶ 17). In early March 2000, at McQuaye's urging, Wasendorf again advanced future brokerage commissions to DBH. At the end of 2000, McQuaye again contacted Wasendorf in Chicago and asked him to purchase additional shares. Wasendorf refused, but entered into a loan agreement with McQuaye, wherein Wasendorf agreed to loan McQuaye personally $125,000. McQuaye agreed to infuse the borrowed money in DBH, but did not. See id. at ¶ 19. In May 2001, Wasendorf requested a Board meeting and offered to pay

Gumpel's traveling expenses for his trip to Chicago. (Wasendorf Aff., Ex. B). In June 2001, McQuaye, Gumpel, and other members of the Board traveled to Chicago. (Wasendorf Aff., ¶¶ 19-21). Gumpel spent three days in Chicago, and attended a DBH-related business meeting at Wasendorf's Chicago office during the trip. See id.; Gumpel Aff., ¶¶ 8-10.

Wasendorf invested a total of approximately $2,355,000 in DBH from May 1999 through August 2003. Wasendorf eventually purchased sufficient shares to be the controlling stockholder of DBH. See id. ¶ 22. At all such times, Wasendorf conducted his business in Chicago. From May 1999 until August 2003, McQuaye, Gumpel and Becker repeatedly contacted Wasendorf by e-mail and phone regarding DBH operations and addressing requests for additional capital. See id. ¶¶ 3-5, 16-22, 31. All communications between the parties occurred in English because Wasendorf does not speak German. (Wasendorf Aff. ¶ 9).

On October 16, 2003, the members of the Board, including Wasendorf, unanimously agreed to liquidate DBH. See id. ¶¶ 37-38. However, Defendants took no steps to liquidate DBH. See id. ¶ 38. On November 17, 2003, McQuaye, Gumpel and Becker sent an e-mail to Wasendorf requesting that he vote by proxy for the termination and replacement of DBH's Chief Financial Officer, Robert Kopp. See id. ¶ 39. On November 26, 2003, prior to voting, Wasendorf requested a copy of the minutes and written records of all Shareholder,

Board, and Board of Directors meetings that occurred during the time that he was a DBH shareholder. See id. ¶ 40. Wasendorf reiterated his request for information on December 4, 2003 in response to a December 3, 2003 letter from Becker. See id. ¶ 40-41. On December 5, 2003, Defendants informed Wasendorf that during the weekend of November 29, 2003, burglars had stolen DBH's computer system and all the documents Wasendorf requested. Comp. ¶ 42. Becker did not mention the burglary in his letter to Wasendorf and did not provide a police report regarding the theft to Wasendorf. See id. ¶ 42-43.

Defendants continue to refuse to liquidate DBH. Wasendorf filed the instant six-count action alleging fraud, breach of contract, violations of the Illinois Securities Law, conversion, civil conspiracy to defraud, and breach of fiduciary duty.

## II. **LEGAL STANDARD**

DBH, McQuaye, and Gumpel seek to dismiss the complaint for lack of personal jurisdiction. Wasendorf carries the burden of proof to establish personal jurisdiction. See Purdue Research Foundation v. Sanofi-Synthelabo, S.A., 338 F.3d 773, 782 (7th Cir. 2003). This burden, however, is low: Wasendorf need only make a prima facie showing of personal jurisdiction to survive the motion to dismiss. See id. In addition, all facts, including conflicting testimony in affidavits or other supporting documents, must be resolved in Wasendorf's favor. See id. Wasendorf, however, must

make a showing based on specific facts set forth in the record, rather than via conclusory allegations. See id. at n.13.

A federal court exercising diversity jurisdiction has personal jurisdiction only if the state in which it sits has jurisdiction. RAR v. Turner Diesel, 107 F.3d 1272, 1275 (7th Cir. 1997). Therefore, the Court must examine Illinois law to determine whether Defendants are properly subject to personal jurisdiction. Illinois authorizes personal jurisdiction on any basis permitted by the Illinois Constitution and to the full extent allowed under the United States Constitution. See 735 ILCS 5/2-209(c); Hyatt Intl., Inc. v. Coco, 302 F.3d 707, 714 (7th Cir. 2002). The Seventh Circuit has suggested that "there is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction." Hyatt, 302 F.3d at 715. Accordingly, the "two constitutional analyses blend together." Ken-Pin, Inc. v. Vantage Bowling Corp., 2004 WL 783092, *9 (N.D. Ill. 2004).

The Due Process clause limits when a state may assert personal jurisdiction over a nonresident defendant. See Pennoyer v. Neff, 95 U.S. 714, 733 (1878). A defendant must have "certain minimum contacts with [the forum state] such that the maintenance of the suit foes not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)(quoting Milliken v. Meyer, 311 U.S. 457, 463

(1940)). Based on these contacts, the defendant "should reasonably anticipate being haled into court" in the forum State. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958).

Minimum contacts can establish either general or specific jurisdiction. General jurisdiction for suits neither arising out of nor related to the defendant's contacts is permitted only where the defendant has "continuous and systematic general business contacts" with the forum state. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984). Specific jurisdiction exists when "the defendant has a lesser degree of contact with the state, but the litigation arises out of or is related to those contacts." Logan Productions v. Optibase, 103 F.3d 49, 52 (7th Cir. 1996). This is a specific jurisdiction case.

Once minimum contacts are established, personal jurisdiction exists unless Defendants make a "compelling case" that litigating in Illinois would violate traditional notions of fair play and substantial justice. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985). Five factors may be considered to determine whether jurisdiction is fair: (1) the burden on the defendant; (2)

the interests of the forum state; (3) the plaintiff's interest in
obtaining convenient and effective relief; (4) the interests of the
interstate judicial system in obtaining an efficient resolution of
the controversy; and (5) the shared interests of the states in
furthering fundamental substantive policies. See id. at 477.
Requiring a defendant to litigate in a state in which it engages in
economic activity is not traditionally considered unfair. See id.
at 474.

## III.  **DISCUSSION**

### A.  **Personal Jurisdiction**

#### 1.  Minimum Contacts with Illinois

Wasendorf argues that he has produced evidence to establish
that each of the Defendants have sufficient minimum contacts with
Illinois. McQuaye traveled to Chicago on several occasions for the
express purpose of soliciting Wasendorf's investment and
involvement in DBH. (Comp. ¶ 12). McQuaye regularly communicated
with Wasendorf by telephone, e-mail, and letter to his office in
Chicago for the purposes of soliciting and securing his investment
of capital. Gumpel also contacted Wasendorf by telephone and e-
mail in connection with DBH-related business and Wasendorf's
investment in DBH. Further, all of the Defendants traveled to
Chicago in June 2001 for a Board meeting and other DBH meetings.
Wasendorf requested the meeting and paid for Gumpel's trip. Gumpel
attended a 2.5 hour meeting at Wasendorf's office in Chicago, which

Wasendorf contends was for purposes of a Board meeting and DBH
investments.

Defendants respond that they do not have minimum contacts with
Illinois sufficient to establish specific jurisdiction. Defendants
argue that the parties' interactions occurred in connection with
DBH shareholder meetings and Board meetings, which took place
primarily in Germany. (Gumpel Aff. ¶ 6). Gumpel argues that he
did not purposely establish minimum contacts with Illinois.
Instead, Gumpel only took one three-day trip to Chicago, which he
made at Wasendorf's request and expense. Gumpel further alleges
that although he and other Board members attended a 2.5 hour
meeting at Wasendorf's Chicago office, the purpose of his trip to
Chicago was to sightsee and he did not conduct DBH business.

In a footnote in supporting memoranda, Defendant Gumpel,
citing Hyatt Intl., 302 F.3d at 713, argues that if the Court finds
there are material disputed facts in the Wasendorf and Gumpel
affidavits, the Court should hold a hearing to determine the
purpose of Gumpel's trip to Illinois. (Reply Mem. at 5, n. 1).
Here, the conclusion that Gumpel's trip to Chicago was related to
DBH business is resolvable in Wasendorf's favor without regard to
potential disputes in the affidavits. The record reflects that
Wasendorf sent an e-mail to Gumpel on Monday, May 21, 2001,
stating:

I would like to suggest a supervisory [Board] meeting as
soon as possible. I suggest that the meeting is held in

- 8 -

Chicago and offer to pay the traveling expenses to Chicago for you and Mr. Becker; assuming, of course, that the expenses for travel for McQuaye and Tsuda can be paid by DBH.

(Wasendorf Aff., Ex. B). Further, both parties acknowledge that Wasendorf requested and paid for the trip that occurred in June 2001, that Gumpel attended a 2.5 hour meeting at Wasendorf's Chicago office during the trip, and that the other Board members also traveled to Chicago on the same weekend for the meeting. Further, while the trip is an important fact, it is but one of several contacts that Gumpel had with Wasendorf in connection with DBH-related business.

Further, Illinois courts have held that a defendant that initiates phone and mail communications in furtherance of a business agreement has sufficient minimum contacts, regardless of whether the defendant traveled to Illinois. See Kalata v. Healy, 312 Ill. App.3d 761, 168-769, 728 N.E.2d 648, 654-655 (1st Dist. 2000). The fact that the communication was conducted from abroad does not detract from the appropriateness of exercising personal jurisdiction. See Mid-Am. Tablewares, Inc. v. Mogi Trading Co., 100 F.3d 1353 (7th Cir. 1996). Here, Defendants had not only had phone, e-mail, and mail communications, but also physically traveled to Chicago to obtain Wasendorf's support and involvement in DBH. Further, McQuaye traveled to Chicago explicitly to initiate Wasendorf's investment in DBH. This Court has held that "[w]hen a defendant is responsible for initiating several

- 9 -

significant links with the forum plaintiff leading to the transaction at issue, this is sufficient to satisfy the requirements of due process." Reid v. GSI Lumonics, Inc., 2002 WL 318288 at *4 (N.D. Ill. 2002)(citing Madison Consulting Group v. State of South Carolina, 752 F.2d 1193, 1203 (7th Cir. 1985)). Both Gumpel and McQuaye traveled to Chicago to meet with Wasendorf regarding DBH, and had multiple contacts with him. Taken together, this conduct establishes minimum contacts under Illinois law. Accordingly, based on the evidence presented, the Court concludes that each Defendant has had sufficient minimum contacts with Illinois, and that specific jurisdiction over Defendants exists in Illinois.

## 2. Fair Play and Substantial Justice

Defendants next contend that it would offend notions of fair play and substantial justice to require them to litigate in Illinois. Defendants are citizens of Germany and the majority of witnesses and litigation-related documents are located in Germany. Gumpel contends that it would be a substantial financial burden because he is an individual citizen who will bear his own costs in the litigation. Wasendorf asserts that it would be extremely difficult for him to litigate in Germany. Further, Wasendorf responds that the majority of witnesses that Wasendorf likely would call to testify other than Defendants currently reside in the United States. (Wasendorf Aff. ¶ 24-25).

- 10 -

"Great care and reserve should be exercised when extending out notions of personal jurisdiction into the international field." Asahi Metal Industry Co. v. Super. Ct. of Cal. Solano County, 480 U.S. 102, 115 (1987)(citations omitted). However, "[w]hen minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." Id. at 114. Jurisdiction will only be found unreasonable in "the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." CoolSavings.Com, Inc. v. IQ.Commerce Corp., 53 F.Supp.2d 1000, 1005 (N.D. Ill. 1999) (citing Burger King, 471 U.S. at 477).

Weighing the factors in the present case, it is clear that it is fair and reasonable to require Defendants to litigate in Illinois. Each of the Defendants have specifically reached into Illinois to conduct business via telephone, e-mail, and in person. Indeed, Gumpel and McQuaye traveled to Chicago to conduct business or in furtherance of their business relationship with Wasendorf. Further, nothing prevents documents from being shipped to Illinois, and the evidence presented does not indicate voluminous records. The financial instability of DBH does not weigh against requiring Defendants to travel to Illinois. To conclude otherwise, "could

- 11 -

encourage non-resident corporations to commit various wrongs against Illinois residents, then dissolve or declare bankruptcy as a tactic to avoid personal jurisdiction in Illinois." Zazove v. Pelikan, Inc., 326 Ill. App.3d 798, 809, 761 N.E.2d 256, 264 (1st Dist. 2001). Accordingly, the Court concludes that requiring the Defendants to litigate here would not be unduly burdensome or offend notions of justice. See Interlease Aviation Investors II (Aloha) L.L.C. v. Vanguard Airlines, Inc., 262 F.Supp.2d 898, 911 (N.D. Ill. 2003).

## B. Forum Non Conveniens

Defendants also move to dismiss under the doctrine of forum non conveniens. The principle of forum non conveniens is that "a trial court may dismiss a suit over which it would normally have jurisdiction if it best serves the convenience of the parties and the ends of justice." Kamel v. Hill-Rom Co., 108 F.3d 799, 802 (1997). The Seventh Circuit has held that there is a strong preference in for conducting litigation in the forum chosen by the plaintiff. "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'" ISI Int'l, Inc. v. Borden Ladner Gervais LLP, 256 F.3d 548, 553 (7th Cir. 2001)(quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)). Dismissal is appropriate only "when a trial in the chosen forum would result in vexation and oppression to the defendant which would <u>far outweigh</u> the plaintiff's

convenience or when the chosen forum would generate administrative and legal entanglements for the trial court." Kamel, 108 F.3d at 802 (emphasis added). Defendants bear the burden of persuasion on all elements of analysis for a forum non conveniens claim. See Gupta v. Austrian Airlines, 211 F.Supp.2d 1078, 1085 (2002). The Court must first determine if an alternative forum is available because (1) the parties are within the jurisdiction and amenable to service, and (2) it is adequate because "the parties will not be deprived of all remedies or treated unfairly." Kamel, 108 F.3d at 803 Id.

The Court must also weigh the private and public interest factors associated with each forum. Id. The private interest factors include "the relative ease of access to sources of proof; availability of compulsory process for the attendance of unwilling witnesses; the cost of obtaining the attendance of willing witnesses; . . . and all other practical problems that make trial of a case easy, efficient, and economical." Kamel, 108 F.3d at 803. The public interest factors include: "the administrative difficulties stemming from court congestion; the local interest in having localized disputes decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflicts of laws or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with

jury duty." Kamel, 108 F.3d at 803 (Piper, 454 U.S. at 241 n. 6)(citations omitted).

### 1. Alternate Forum

Here, Germany is the proposed alternative forum. Wasendorf contends that Germany is not an adequate alternative forum due to differences in discovery procedures. He submits an affidavit to support his claim. Unless the remedy provided by the alternative forum is effectively no remedy at all, however, "[t]he possibility of a change in substantive law should ordinarily not be given conclusive or even substantial weight in the forum non conveniens inquiry." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 247 (1981). Further, this district has previously declined to find Germany an inadequate forum due to differences in discovery procedures. See Hull 753 Corp. v. Elbe Flugzeugwerke GmbH, 58 F.Supp.2d 925, 929 (N.D.Ill. 1999).

### 2. Private Interests

Defendants contend that private interests favor Germany as the forum for this case. As support, Defendants note that they, as well as other potential witnesses, reside in Germany. It is uncertain whether those potential witnesses could be compelled to testify in Illinois. Defendants further contend that the majority of the documents are located in the commercial register in Germany and would require translation from German into English.

Based upon the allegations in the Complaint, however, it is absolutely clear that it would be a substantial burden to Wasendorf to litigate in Germany. Wasendorf cannot speak German, and all communications between Wasendorf and Defendants were conducted in English. The great majority of the potential witnesses identified by Wasendorf have previously traveled to Illinois. Wasendorf has had difficulty in obtaining necessary documents from Defendants. He raises concerns about his ability to compel the production of such documents under German civil procedure. Accordingly, the Court concludes that Germany would not be a more efficient, economic, or fair forum than the United States to resolve the present matter on the particular facts of this case. Accordingly, the Court concludes that the private interests in this case favor litigating in Illinois.

### 3. Public Factors

Defendants contend that public interests favor Germany because United States courts should avoid the application of foreign law and DBH is a German company. Wasendorf responds that although the parties may need to explain the nature of a German supervisory board, Illinois law should otherwise apply. Wasendorf alleges violations of Illinois laws because Defendants repeatedly contacted Wasendorf while he was working in Chicago for the alleged purpose of fraudulently selling him securities and furthering their scheme to defraud him in connection with DBH.

"Illinois clearly has a strong interest in regulating the activities of economic actors operating in the state . . . [and] an interest in assuring remedial relief for its citizens who have been injured by foreign actors." Reid, 2002 WL 318288 at *5. Further, when the alternative forum is another country, the choice of a United States forum by a plaintiff who is a citizen of this country should be given a great amount of deference. See Apotex Corp. v. Istituto Biologico Chemioterapico S.P.A., 2003 WL 21780965, *7 (N.D. Ill. 2003). Based on the evidence in the record, the Court concludes that public interests also require litigation in Illinois.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss, or, alternatively, for a Change of Venue for forum non conveniens are **DENIED**.

**IT IS SO ORDERED**.

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: _December 10, 2004_